UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAMAN SINGH,

                     Plaintiff,

          -v-

ACCUTIME WATCH CORP.,

                     Defendant.

24-CV-8007 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff Daman Singh alleges unlawful discrimination and retaliation by his former employer, Defendant Accutime Watch Corporation ("Accutime"). Singh is an Indian and Sikh and makes these claims of discrimination on the basis of national origin and religion. Singh claims that the alleged actions of his employer are violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200 *et. seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et. seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et. seq.* Singh brings twelve claims pursuant to these statutes, alleging retaliation, hostile work environment, and disparate treatment.

    Before the Court is Accutime's motion to dismiss Singh's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, that motion is granted.

**I.    Background**

    Unless otherwise noted, the following facts are drawn from Singh's Complaint (ECF No. 1 ("Compl.")) and are presumed true for the purpose of resolving this motion. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

Between June 2021 and August 12, 2022, Singh was employed by Accutime as an "Associate Director of Amazon Advertising." (*See* Compl. ¶¶ 13, 15.) As part of his job, Singh "began developing Accutime's Amazon store," "built the store from the ground up with a comprehensive brand-centric strategy to make Accutime the centerpiece on Amazon," and worked on "keyword research, rewriting and updating listing titles, bullet points, and descriptions so that they are actually comprehensible."[1] (ECF No. 15 ("Mtn.") at 25-26.)

Singh alleges that throughout his tenure at Accutime, he "was subjected to a disproportionate workload compared to his coworker, Saudia Mumu, the E-commerce Director." (*Id.* ¶ 16.) Singh also states that two of Accutime's Licensing Directors, Josh Raider and Jennifer Sacco, were "not as productive" as he, but that both were given "a salary raise" when Singh was not. (*Id.* ¶¶ 28-31.) Singh does not allege in his complaint that his supervisors at Accutime required that he take on more work than Mumu, Raider, or Sacco, but rather stated in an email to Accutime's owner and Director of Sales, Marc Shama, that he was "voluntarily taking on double the responsibility that [he] was hired for." (Mtn. at 26.)

Frustrated with his situation at Accutime, Singh "requested and was granted a meeting" with Shama on or about August 11, 2022 "to discuss his workload and request a raise due to the increased workload that he was carrying." (Compl. ¶ 25.) At this meeting, Singh states that Shama "was not receptive" to Singh's request for a raise and instead "threatened to terminate Mr.

---

[1] These descriptions are drawn from an email Singh sent to Marc Shama on the day he was terminated from Accutime. (ECF No. 15 at 25-27.) Though Singh does not attach this email to his complaint, the Court may consider documents that are "integral" to Singh's pleadings. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). Singh relies on the email as one of the two instances where he confronted his employer about his job responsibilities and "complain[ed] about his treatment" (Compl. ¶ 27), and thus his retaliation and discrimination claims depend in part upon the contents of the email. It is thus incorporated by reference, and proper for the Court to consider at this stage.

Singh's employment." (*Id.* ¶ 26.) Singh sent a follow-up email the next day, again "detailing his complaints about his treatment." (*Id.* ¶ 27.) Later that day, Shama fired Singh. (*Id.*)

Singh commenced this lawsuit on October 21, 2024, asserting twelve counts of intentional and unlawful discrimination based on his religion and national origin, hostile work environment, and retaliation. (*See generally*, Compl.) On January 31, 2025, Accutime moved to dismiss Singh's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Mtn.), which Singh opposed on February 23, 2025 (ECF No. 18 ("Opp.")). Accutime did not file a reply in further support of its motion.

## II.     Legal Standard

For a claim to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff is required to offer enough facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine if a claim is plausible, this Court must weigh whether "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, on a motion to dismiss for failure to state a claim, this Court "must accept as true all of the [factual] allegations" in the complaint. *Id*. To overcome a motion to dismiss, a complaint need not contain "detailed factual allegations," though it must provide more than simple "labels and conclusions," or mere "formulaic recitation[s] of the elements of a cause of action." *Id.* at 555.

## III.    Discussion

Singh alleges that during his tenure at Accutime (1) his non-Indian non-Sikh counterparts received pay raises when he did not, despite his claims that they were less productive than he; (2) he was terminated in response to raising concerns over discrimination; and (3) he took on work

3

responsibilities outside his job description and beyond what was required of his non-Indian non-Sikh coworkers. (*See* Compl. ¶¶ 16-32.) [2]

### A.    Disparate Treatment

First, Accutime seeks to dismiss Singh's claims of discrimination on the basis of national origin and religion due to an absence of facts that would support an inference of disparate treatment. (Mtn. at 12-16). For a plaintiff to state a disparate treatment claim pursuant to Title VII, the NYSHRL, and the NYCHRL, he must plausibly allege "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Sabic-El-Rayess v. Tchrs. Coll., Columbia Univ.*, 758 F. Supp. 3d 268, 277 (S.D.N.Y. 2024). An inference of discrimination may be drawn from factors including "the more favorable treatment of employees not in the protected group, or the

---

[2] Singh brings claims pursuant to federal, state, and city employment discrimination law. Before the 2019 amendments to the NYSHRL, Title VII and the NYSHRL were "generally treated as 'analytically identical,' and addressed together." *Farmer v. Shake Shack Enter., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019)). In late 2019, legislative amendments to the NYSHRL instructed courts to construe the NYSHRL "like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof,'" irrespective of how similarly written federal law had been construed. *See McHenry v. Fox News Network*, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 300). This Court has recognized remaining ambiguity as to whether these 2019 amendments simply adjusted the NYSHRL to be a "a more lenient standard of liability" closer to the NYCHRL, or whether variation continues to exist. *See Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 259 (S.D.N.Y. 2024) (quoting *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023)). Where this pendulum falls "has not [been] definitively resolved" by the New York Court of Appeals, though it clear that the standards under the state and city statutes are now similar, and no court in this District has suggested that the NYSHRL could be read as more permissive than the NYCHRL. *See Singh*, 750 F. Supp. 3d, at 259.

As a result, if a valid claim exists pursuant to Title VII, a plaintiff's corresponding claims under the NYSHRL and NYCHRL also survive a motion to dismiss. Conversely, where a claim fails to meet the threshold for plausibly pleading discrimination pursuant to the NYCHRL, a claim pursuant to the NYSHRL and Title VII must fail. Thus, where any disparity exists between the legal standards of these three laws, this Court focuses its analysis on the most permissive standard—the NYCHRL—to gauge whether Singh's complaint survives even the most lenient of standards.

sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d, at 312 (quotation marks omitted). To demonstrate discriminatory intent at the pleading stage, Singh must establish a "reasonable inference" of discrimination. *See Iqbal*, 556 U.S., at 678. This may be shown by a plausible allegation that the plaintiff was treated "less favorably than a similarly situated employee outside [the plaintiff's] protected group." *See Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quotation marks omitted). In other words, showing disparate treatment requires Singh to identify at least one individual outside his protected class who was similarly situated and treated more favorably by Accutime.

Singh does little to show how the three other employees whom he identifies—Saudia Mumu, Josh Raider, and Jennifer Sacco—were similarly situated to him. First, he provides few specific facts to compare himself to Mumu. (*See* Compl. ¶¶ 16-18.) Singh refers to Mumu as the "E-commerce Director," who "lacked the necessary skills to perform her job, which required Mr. Singh to assume her responsibilities in addition to his own." (*Id.* ¶¶ 16-17.) He explains that Mumu "was only able to create around forty [Amazon] listings over a whole year" while Singh "created around seventy-five" such listings "over the course of four to six weeks." (*Id.* ¶ 22.) However, Singh does not explain what other job responsibilities Mumu had, the difference in—or even meaning of—Singh and Mumu's job titles, their respective salaries, or how Accutime treated Mumu. In short, the complaint "fails to describe who these people are, what their responsibilities were, how their workplace conduct compared to [plaintiff's], or how they were treated." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014).

Second, though Singh notes that Raider was hired a month after him and that the two individuals shared a physical workspace, he fails to allege any specific facts about Raider's role

5

or responsibilities that would allow this Court to infer similarity between their job responsibilities.  (*See* Compl. ¶¶ 28-32.)  To the contrary, Singh identifies Raider as a "Licensing Director," while Singh was employed as an Associate Director of Amazon Advertising.  (*Id.* ¶ 28.)  Singh does not explain how his and Raider's jobs or duties compared, what their comparative salaries were, or what level of seniority the two held at Accutime.

Finally, the same considerations apply to Singh's comparison between himself and Sacco, whom Singh identifies as a "Licensing Manager" who was "awarded a salary raise approximately eight months prior to Mr. Singh's termination."  (*See id.* ¶ 30.)  Singh does not allege how much Sacco was paid, nor how much the raise was.  Nor does he provide any information about his salary for comparison.  Indeed, the fact that Raider and Sacco each received a raise at some point in the year before Singh was terminated for asking for a raise does not mean they were ever paid disproportionately more than Singh.

Further, though Singh spends much of his complaint detailing his value-add to Accutime compared to his coworkers, it would be difficult to infer disparate treatment when the basis for Singh's claims of a larger workload and greater productivity compared to his counterparts was the result of his voluntarily taking on additional work assignments.  (*See* Mtn. at 26.)  Singh does not allege that he was actually assigned more burdensome workloads than the alleged comparators, just that he voluntarily assumed work beyond his own job description.  (*See id.*)

Singh argues in his opposition to Accutime's motion that, "[a]t the pleadings stage, a plaintiff has a 'minimal burden' of alleging facts 'suggesting an inference of discriminatory motivation.'" (Opp. at 12 (citing *Vega*, 801 F.3d at 84).)  However, this minimal burden still requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* 556 U.S. at 678; *see also Vega*, 801 F.3d, at 86

("While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly* 550 U.S. at 555)). For example, Singh would need to add facts comparing his title, responsibilities, and supervisor to the three co-workers he identifies as comparators. *Cf. King v. Aramark Servs. Inc.*, 96 F.4th 546, 563 (2d Cir. 2024).

Singh's threadbare descriptions of his co-workers hardly display "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases" and thus ultimately fall short of establishing similarity. *See Ruiz*, 609 F.3d at 494 (quotation marks omitted). Therefore, Singh's disparate treatment claims are dismissed.

### B.  Retaliation

Second, Accutime moves to dismiss Singh's retaliation claims on the basis that Singh has failed to demonstrate that he engaged in "protected activity." (Mtn. at 7-10.) Retaliation claims, in the context of discrimination statutes, are for the purpose of protecting individuals from retribution for opposing discriminatory conduct. For a plaintiff to plead retaliation pursuant to the NYSHRL and NYCHRL, he must allege that he "took an action opposing [his] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quotation marks omitted). Engaging in protected activity pursuant to the NYCHRL is satisfied by an "informal complaint to a supervisor" that simply raises the issue of discrimination. *See Santana v. Latino Express Rest., Inc.*, 198 F. Supp. 3d 285, 296-97 (S.D.N.Y. 2016) (citing *Nieblas-Love v. New York City Hous. Auth.*, 165 F.Supp.3d 51, 69-70 (S.D.N.Y. Feb. 26, 2016)); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (enumerating examples of protected activity to include: "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges").

In this regard, putting an employer on notice does not require explicitly mentioning the word "discrimination," *see Risco v. McHugh*, 868 F. Supp. 2d 75, 112 (S.D.N.Y. 2012), "[b]ut, in order for a complaint to form the basis of a retaliation claim the employer must have understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by the employment discrimination laws," *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 418 (S.D.N.Y. 2017) (cleaned up).

Singh argues in his opposition brief that he "participated in protected activity when he submitted . . . verbal and written complaints to Accutime management about, *inter alia*, a disparate workload compared to his female, non-Indian, non-Sikh coworker and hostility from his manager in connection with same." (Opp. at 8.) However, his complaint notably does not allege that he specifically complained of his lack of a raise on the basis of protected category, nor does it mention the relevant identities of his non-Indian, non-Sikh co-workers. Such "generalized complaints about oppressive working conditions such as excessive hours" on their own cannot be reasonably understood as "complaining of conduct prohibited by Title VII, the NYSHRL, or the NYCHRL." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 123, 125 (2d Cir. 2024) (quotation marks omitted). And though Singh notes in his opposition brief that the August 12 email does not "state[] or suggest[] that Mr. Singh's conversation from the prior day did not include his race and religion" (Opp. at 9-10), he still has the burden of pleading that he did raise his protected category in the meeting, or at least providing context sufficient to indicate to Accutime that he was complaining of unlawfully discriminatory activity. In short, Singh cannot meet his Rule 12(b)(6) burden by cleverly pointing out that he never said he did *not* complain of prohibited discrimination. He must affirmatively state that he *did* complain of such

8

discrimination or that he provided sufficient context for Accutime to understand his conversation as an informal complaint of illicit treatment. His complaint notably lacks such allegations.

Singh further argues that even vague mentions of differential treatment between named co-workers is enough to constitute participation in protected activity. (Opp. at 8.) Singh cites *Hubbard v. Total Communications Inc.*, where the Second Circuit, in a non-binding summary order, held that an email to an employer noting the differential treatment of "guys" was protected activity. 347 F. App'x 679, 681 (2d Cir. 2009) (summary order). However, Singh omits important details of the plaintiff's email in *Hubbard*, which is clearly distinguishable from the email Singh sent to his supervisor on August 12 and the vague allegations surrounding Singh's August 11 conversation with Shama. The complaint in *Hubbard* referenced an email that "alleged differential treatment between Hubbard and the men in her department." *Id.* at 681. In that email, the plaintiff wrote: "It is really nice to find out that the entire service dept got their review/raises that were due in July 2003. Which would be 10-12 guys/technicians." *Id.* (capitalization altered). The Second Circuit held that this email complaint was protected activity because the plaintiff identified individuals within her specific department and suggested sex discrimination by her reference to "guys" getting raises when she did not. *See id.* In the present case, however, Singh's August 12 email neither identifies himself as a member of a protected class, defines the identity of his co-workers, nor otherwise mentions any identity-related words. (*See* Mtn. at 25-27.) And Singh notably does not allege that his in-person conversation with Shama the day before included a reference to his protected class or his co-worker's relevant identities either. Without more, Singh's general reference to an increased workload cannot be interpreted to have reasonably indicated to a supervisor that Singh was making a complaint about illegal activity. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10,

9

17 (2d Cir. 2013) (dismissing a retaliation claim when "nothing in [the plaintiff's] behavior . . . would have allowed her employer to reasonably have understood that [plaintiff's comments were] directed at conduct prohibited by Title VII" (cleaned up)).

Ultimately, the text of Singh's email and his allegations about his conversation with Shama are too vague and generally disconnected from language identifying discrimination for the Court to conclude that Shama and Accutime knew or should have known that Singh was complaining of illegal discrimination. Singh's retaliation claims are therefore dismissed.

### C. Hostile Work Environment

Finally, Accutime moves to dismiss Singh's claims of a hostile work environment based on an argument that Singh fails to allege "*any*" facts to plausibly support the claim. (Mtn. at 15-17.) For a complaint of a hostile work environment pursuant to the NYCHRL—the most lenient standard—to survive a motion to dismiss, a plaintiff must plausibly allege that they were "treated less well at least in part because of [their] membership in a protected class." *See Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)) (cleaned up). However, while the NYCHRL sets a standard that is certainly more permissive than the high "severe and pervasive" requirement of Title VII, "[w]hen applying [the NYCHRL] standard, 'district courts must be mindful that the NYCHRL is not a general civility code,' and a plaintiff must still establish 'a discriminatory motive' for any complained-of conduct." *Nofal v. IMCMV Times Square LLC*, No. 22-CV-3104, 2024 WL 1138928, at *4 (S.D.N.Y. Mar. 15, 2024) (quoting *Mihalik*, 715 F.3d at 110).

Singh has failed to make an initial showing to support his claims of a hostile work environment because he alleges no facts "that support the inference that he was treated less well *because of* his protected characteristics." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273,

302 (S.D.N.Y. 2019). Singh claims that the environment at Accutime was an "objectively abusive work environment" shaped negatively "on the basis of his religion and national origin." (Compl. ¶ 45.) Singh tries to bolster this conclusory statement in his opposition brief, clarifying that this hostile environment was a product of (1) "increased workload for lesser pay" and (2) "threats to terminate him for doing extra work" that were "continuous and persistent." (Opp. at 10.) On Singh's first point, "unless plaintiff was subjected to 'disproportionately burdensome work assignments,'" then "allegations of a heavier workload alone cannot support a viable hostile work environment claim." *Wilson v. Fam. Dollar Stores of N.Y., Inc.*, No. 06-CV-639, 2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008), *aff'd* 374 F. App'x 156 (2d Cir. 2010) (summary order). Singh's descriptions of a heavier workload cannot be interpreted as disproportionately burdensome because he voluntarily assumed these additional assignments. (*See* Mtn. at 26). Tellingly, Singh writes in the August 12 email to his supervisor that he was "threatened with termination for voluntarily taking on double the responsibility I was hired for." (*Id.*)

Singh also alleges that "instead of offering a raise consummate with Mr. Singh's workload, Mr. Sharma [sic] threatened to terminate Mr. Singh's employment." (Compl. ¶ 26.) According to the August 12 email, Shama threatened Singh with termination due to Singh's failure to re-direct his request for assistance to his supervisor—as had been requested. (*See* Mtn. 25-26.) But what "is required to sustain a NYCHRL 'hostile work environment claim' is 'unequal treatment' *based upon membership in a protected class.*" *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 29, 31 (1st Dep't 2009)), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (summary order). Singh fails to plead any facts that would allow this Court to plausibly infer a

connection between Shama's termination threats and Singh's protected characteristics. Indeed, Singh's allegations and the text of the August 12 email serve to suggest only that Singh—an at-will employee—was threatened with termination for perceived insubordination.

Holding that Singh's complaint survives the Rule 12(b)(6) standard would mean that every at-will employee threatened with discipline or termination would have a viable NYCHRL hostile environment claim. Such an outcome would warp the NYCHRL beyond recognition and create an unsustainable regime for New York employers. Accordingly, Singh's hostile work environment claims are dismissed.

### D. Leave to Amend

Singh requests that, "[i]f Plaintiff's [August 11] conversation was not sufficiently detailed in his Complaint" to support his claims of retaliation, that he be granted an "opportunity to amend prior to dismissal." (Opp. at 10 n.1).

Generally, Rule 15(a) of the Federal Rules of Civil Procedure affords courts "sound discretion" in deciding whether to grant a request for leave to amend. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A court may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *See id.* Since additional facts could indicate that Singh did raise his protected characteristics in his August 11 conversation with Shama, or that he provided sufficient context to put Accutime on notice regarding claims for discrimination, his request to amend his retaliation claims is not necessarily futile.

Singh may, within 14 days of this Opinion and Order, file an amended complaint to the extent he can plead facts about the August 11, 2022 meeting that would support the conclusion that Singh engaged in protected activity. Further, though Singh's request is specifically about his retaliation claims, Singh may also amend his disparate treatment claims to the extent he can

plead additional and sufficient facts regarding his proposed comparators or other facts plausibly showing disparate treatment.

## IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

Plaintiff shall file any amended complaint within 14 days of the publication of this Opinion and Order.  If Plaintiff chooses not to file an amended complaint, he is directed to submit a letter so stating, in which case the Court will immediately enter final judgment, permitting an appeal to the Court of Appeals for the Second Circuit.

The Clerk of Court is directed to terminate the motion at Docket Number 15.

SO ORDERED.

Dated: July 16, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge